IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIKEL PERNELL, | ) |
| | ) |
| Petitioner, | ) No. 1:17 C 9253 |
| | ) Hon. Marvin E. Aspen |
| v. | ) |
| | ) |
| JACQUELINE LASHBROOK, Warden | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Petitioner Mikel Pernell's *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to vacate, set aside, or correct his conviction. For the reasons set forth below, we deny Petitioner's request for habeas relief.

## BACKGROUND

**I.    TRIAL AND CONVICTION**

The following facts are taken from the decision of the Illinois Appellate Court, *People v. Pernell*, 2016 IL App (1st) 133876-U, 2016 WL 941773 (1st Dist. Mar. 11, 2016), supplemented where appropriate by the appellate record.[1] *See United States ex rel.*

---

[1] We rely on the Appellate Court as the last state court to consider Petitioner's claims on the merits. *Boyd v. Boughton*, 798 F.3d 490, 492 (7th Cir. 2015); *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003). The facts taken from the state court decision are presumed to be correct unless the petitioner meets his "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In complying with Rule 5 of the Rules Governing Section 2254 Cases, Respondent informs us that Petitioner's trial transcript exists but is unavailable due to Petitioner's unrelated post-conviction appeal. (*See* Dkt. No. 14 at 1 n.1.) However, Petitioner's claims do not challenge the factual determinations of any state proceeding under 28 U.S.C. § 2554(d)(2), nor does Petitioner attempt to rebut any factual findings of the state proceedings as required by § 2554(e)(1). We thus presume that the unrebutted facts as articulated by the Appellate Court are correct. *See Davis v. Ayala*, 135 S. Ct. 2187, 2199–2200 (2015); *Rice v. Collins*, 546 U.S. 333, 338–39, 126 S. Ct. 969, 974 (2006);

*Parish v. Hodge*, 73 F. Supp. 3d 895, 899 n.1 (N.D. Ill. 2014). On September 18, 2009 at 11:00 a.m., Petitioner was driving a two-tone Oldsmobile northbound on Torrence Avenue in Chicago when a red pickup truck, driven by George Cruz, pulled over from the right lane to the left lane, cutting off Petitioner's car. *Id.* ¶¶ 4, 6, 21. Petitioner then drove up on Cruz's right and both cars stopped at a stop sign, where Cruz intended to turn left onto 105th Street. *Id.* ¶¶ 5, 7. Cruz's wife testified that Petitioner yelled at Cruz, screaming "you are going to get shot." *Id.* ¶ 5. Cruz apologized to Petitioner and explained that he changed lanes to turn left onto 105th Street. *Id.* One witness testified that the occupants of the pickup truck appeared to be "gesturing apologetically." *Id.* ¶ 6. No eyewitness heard anyone in the pickup truck yell at Petitioner. *Id.* ¶¶ 5, 6. Petitioner abruptly turned left in front of Cruz's pickup, pulled over to the curb on 105th Street, and took out a gun. *Id.* ¶¶ 5, 7. Cruz proceeded to turn left onto 105th Street, stopped in the middle of the street, and apologized again to Petitioner for cutting him off. *Id.* ¶ 5. Petitioner fired a gunshot through the pickup's windshield, hitting Cruz in the eye and killing him. *Id.* ¶¶ 5, 7, 11, 12, 47. Cruz's pickup was between ten and twenty feet away from Petitioner's car when the shooting occurred. *Id.* ¶¶ 8, 10. Immediately after the shooting, Petitioner drove away. *Id.* ¶ 10. He was arrested about a month later. *Id.* ¶ 18.

At trial, four eyewitnesses to all or part of the shooting testified for the prosecution. *Id.* ¶¶ 4, 6, 8, 10. Two witnesses testified to seeing the entire event, including Cruz's wife, who rode in the pickup's passenger seat, and a Postal Service supervisor whose car was directly behind Cruz's pickup when the shooting occurred. *Id.* ¶¶ 4, 6, 7. Two other witnesses, who either lived next to or were walking by the scene, saw Petitioner's car near Cruz's and heard the gunshot. *Id.* ¶¶ 8, 10. Another witness, a former girlfriend, testified that Petitioner told her he

---

*Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) (use of transcripts "is left to the sound discretion of the district court").

had "shot a Mexican guy in the face with his wife in the car in a road rage incident on Torrence Avenue." *Id.* ¶¶ 22, 23. She further testified that Petitioner said the victim had "cut him off" and he "just shot him" despite the victim's attempt to apologize. *Id.* ¶ 23.

Petitioner testified in his own defense at trial. He admitted to shooting Cruz but claimed to have done so in self-defense. *Id.* ¶ 25. Petitioner testified that while he was driving northbound on Torrence Avenue on the date in question, he noticed a red pickup truck tailgating him. *Id.* Petitioner said the pickup's driver flashed his headlights and honked his horn at Petitioner. *Id.* Although Petitioner was driving the speed limit, it appeared to Petitioner that the pickup driver wanted him to drive faster. *Id.* Petitioner testified that the pickup bumped Petitioner's car and that the driver made gestures that Petitioner interpreted as threats. *Id.* ¶ 26. Petitioner said he had been driving about 40 miles per hour, but the traffic around him made it difficult to change lanes, and he feared the pickup driver would rear-end him if he slowed down to change lanes or turn. *Id.* When Petitioner finally did change lanes, he testified that the pickup truck continued following him. *Id.* Petitioner said he accelerated and that the pickup accelerated in turn, bumping Petitioner's car a second time. *Id.* Petitioner testified that he felt "threatened and scared," and that upon reaching 105th Street, he ran a stop sign, turned left to escape the pickup, and pulled over to a curb to calm down. *Id.* ¶¶ 26, 27. Petitioner testified that the pickup followed him and stopped behind his car in the middle of the street, making Petitioner feel afraid. *Id.* ¶ 27. When Petitioner saw the pickup driver reach down in the cab, Petitioner feared the driver was retrieving a weapon and would exit the truck to attack him. *Id.* In response, Petitioner got a gun from the glove compartment, aimed at the truck, and fired. *Id.* Petitioner testified that he intended the shot as a warning and did not intend to hurt or kill the driver. *Id.* After the shooting, Petitioner drove away. *Id.*

On cross-examination, Petitioner acknowledged that he never attempted to turn off Torrence Avenue before 105th Street or to slow down to allow the pickup truck to pass him, nor did he stop to report the pickup had bumped his car. *Id.* ¶ 28. Petitioner denied making the statements about the shooting that his former girlfriend had testified to in the state's case. *Id.* As part of his self-defense claim, Petitioner's counsel also presented three witnesses who testified that the victim, Cruz, had a propensity for violence. *Id.* ¶ 29. These witnesses all described incidents that occurred at least 15 years before Cruz's death. *Id.* ¶¶ 29, 30, 31.

During closing arguments, Petitioner's counsel made the following statements:

> And the Defense has proven that this was a self-defense situation by a preponderance of the evidence. It's not first-degree murder, and that makes Mr. Pernell not guilty of first-degree murder.
>
> We believe under a totality of the circumstances that also Mr. Pernell's actions were not unreasonable. And so Mr. Pernell is not guilty of second-degree murder because his actions were reasonable under the circumstances and he was justified in using the force that he used.

(Direct Appeal Br., St. Ct. R., Ex. B (Dkt. No. 14–2) at PageID #:207.)

The judge, in a bench trial, rejected Petitioner's self-defense claim and found him guilty of first-degree murder. *Pernell*, 2016 IL App (1st) 133876-U at ¶ 32.

## II. DIRECT APPEAL

Petitioner appealed his conviction to the Illinois Appellate Court on the grounds that defense counsel at trial was ineffective for misapprehending the legal standard for self-defense in closing statements and for not arguing for a second-degree murder conviction in the alternative. *Id.* ¶ 2. Petitioner also claimed the trial judge deprived him of a fair trial by repeating the erroneous self-defense standard in rejecting his self-defense claim. *Id.*[2] The appellate court

---

[2] Not relevant here is Petitioner's final ground on direct appeal, challenging the length of his sentence as excessive. *Pernell*, 2016 IL App (1st) 133876-U at ¶ 2.

rejected all of Petitioner's claims and affirmed his conviction on March 11, 2016. *Id.* ¶ 57. Petitioner renewed these claims in his Petition for Leave to Appeal ("PLA"), which the Illinois Supreme Court summarily denied on September 28, 2016. (Direct Appeal PLA, St. Ct. R., Ex. E (Dkt. No. 14–5) at PageID #:293; Summ. Denial, St. Ct. R., Ex. F (Dkt. No. 14–6).)

## III. FEDERAL HABEAS PETITION

Petitioner filed the present *pro se* habeas petition on December 22, 2017. (Pet. (Dkt. No 1).) In it, he again asserts that (1) the trial court deprived him of a fair trial in applying an erroneous self-defense standard; (2) trial counsel provided ineffective assistance for misstating the self-defense standard in closing argument; and (3) trial counsel was ineffective for failing to argue for second-degree murder as an alternative lesser conviction. (*Id.* at 5.) Petitioner represents that he has exhausted the claims raised in his habeas petition.[3]

By pursuing the same claims in state court that he now presents in his habeas petition, Petitioner has properly exhausted his state remedies, and there is no dispute that his petition is timely filed. *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010); *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (habeas review is appropriate once petitioner has "fairly present[ed] to each appropriate state court his constitutional claims").

## LEGAL STANDARD

We are empowered to grant a writ of habeas corpus only if Petitioner is imprisoned "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991). For a claim that was

---

[3] Although Petitioner has raised other claims in a separate post-conviction appeal pending in Illinois state court, Petitioner "do[es] not seek to hold this 2254 habeas corpus proceeding in abeyance, because the claims which I now present are the most meritorious . . . ." (Pet. at 4.) We therefore proceed with our consideration of Petitioner's habeas corpus petition. (Dkt. No. 6 at 2.)

5

adjudicated on the merits in a state-court proceeding, we grant the writ only if the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court's findings of fact are presumed correct unless Petitioner meets his burden of "rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

A decision is "contrary to" clearly established federal law if the state court contradicts the Supreme Court on a question of law or reaches a result opposite to Supreme Court precedent on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000); *Hall v. Zenk*, 692 F.3d 793, 798 (7th Cir. 2012). A decision involves an "unreasonable application" of clearly established law if the state court "identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *Williams*, 529 U.S. at 408–09, 120 S. Ct. at 1520, or "unreasonably extended a rule to a context where it should not have applied or unreasonably refused to extend a rule to a context where it should have applied." *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011); *see also Williams*, 529 U.S. at 409–10, 120 S. Ct. at 1521–22 (clarifying that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law" and is assessed objectively); *Hall*, 692 F.3d at 798 (application of law is "reasonable if it is 'at least minimally consistent with the facts and circumstances of the case'" (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999))).

## ANALYSIS

### I. TRIAL COURT ERROR

Petitioner first claims the trial court deprived him of a fair trial in erroneously stating Petitioner bore the burden to prove self-defense by a preponderance of the evidence. (Pet. at 5.)

6

Respondent argues that this claim is not cognizable in federal habeas because the trial court's error was one of state law, not otherwise protected by the Constitution and beyond our ability to redress on a federal habeas petition. (Ans. (Dkt. No. 13) at 5–6.)

Under Illinois law, self-defense is an affirmative defense that, once raised with specific evidence, shifts the burden to the prosecution to disprove beyond a reasonable doubt. *See People v. Lee*, 213 Ill. 2d 218, 224–25, 821 N.E.2d 307, 311 (Ill. 2004). At Petitioner's trial, the court made the following statement: "the defense has failed to show by a preponderance of the evidence that the defendant acted in self-defense." *Pernell*, 2016 IL App (1st) 133876-U at ¶ 36. Petitioner argues that the trial court misapplied the burden of proof for self-defense and that his guilty verdict is therefore unconstitutional. (Reply (Dkt. No. 18) at 2.)

Petitioner rests much of his argument on the Supreme Court's ruling in *In re Winship*, which held that the Due Process Clause of the Fifth and Fourteenth Amendments entitles a criminal defendant to proof beyond a reasonable doubt "of every fact necessary to constitute the crime with which he is charged." 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). However, as the Supreme Court clarified in *Smith v. United States*:

> While the Government must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged," *In re Winship*, 397 U.S. 358, 364 (1970), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required," *Patterson v. New York*, 432 U.S. 197, 210 (1977). The State is foreclosed from shifting the burden of proof to the defendant only "when an affirmative defense *does* negate an element of the crime." *Martin v. Ohio*, 480 U.S. 228, 237 (1987) (Powell, J., dissenting). Where instead it "excuse[s] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to overcome the defense beyond a reasonable doubt. *Dixon v. United States*, 548 U.S. 1, 6 (2006).

568 U.S. 106, 110, 133 S. Ct. 714, 719 (2013).

This passage makes clear, and courts in this District have so held, that "[a]lthough Illinois has chosen to put the burden on the prosecution to disprove self defense beyond a reasonable

7

doubt, this is not required by the federal constitution." *Ellis v. Butler*, No. 15 C 2240, 2015 WL 8988712, at *3 (N.D. Ill. Dec. 16, 2015); *Poole v. Lashbrook*, No. 16 C 11060, 2018 WL 620056, at *8 (N.D. Ill. Jan. 30, 2018) (appeal docketed); *Cobbs v. Calloway*, No. 16 C 10380, 2017 WL 4772704, at *6 (N.D. Ill. Oct. 23, 2017). The federal habeas statute permits federal courts to grant relief only when one's imprisonment violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Neither the Constitution nor any federal law requires an affirmative defense to be debunked beyond a reasonable doubt, and a state court applying less than this standard violates no federal law. *Ellis*, 2015 WL 8988712, at *3. Petitioner's first claim thus "raises a non cognizable issue of state law" upon which we cannot grant relief. *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")). In any event, the state appellate court settled this issue when it determined that the trial court had not, in fact, misapplied Illinois' self-defense standard because Petitioner had not produced enough evidence to fairly raise the defense. *Pernell*, 2016 IL App (1st) 133876-U at ¶ 38. We are bound by the state court's decision on this issue of state law. *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013); *Ellis*, 2015 WL 8988712, at *5. For these reasons, we reject Petitioner's first claim.

## II. INEFFECTIVE ASSISTANCE

Petitioner advances two claims that the state appellate court unreasonably applied the standard for ineffective assistance of counsel. (Pet. at 5; Reply at 6, 12.) The right of a criminal defendant to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). A successful ineffective assistance claim requires a convicted individual to show both (1) that counsel's "performance was deficient," and (2) that the

8

counsel's performance "prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. As to the first prong, a reviewing court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. In applying this standard, "counsel is strongly presumed to have rendered adequate assistance," and judicial review of counsel's actions is thus "highly deferential." *Id.* Even if counsel's performance was deficient, a convicted defendant must still establish prejudice, amounting to a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068; *see also Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792 (2011) ("The likelihood of a different result must be substantial, not just conceivable."). A court may reject an ineffective assistance claim solely by finding that no prejudice resulted from counsel's alleged deficiency. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 (courts have leeway to address the two prongs in either order, or to address only one if showing is insufficient).

If the standards for assessing attorney effectiveness are already "highly deferential," a federal court reviewing a state court's application of *Strickland* in federal habeas must be "doubly so." *Richter*, 562 U.S. at 105, 131 S. Ct. at 788 (quotations omitted). *Strickland* itself articulates a general standard with a wide range of reasonable applications, 466 U.S. at 690, 104 S. Ct. at 2066, and a court applying 28 U.S.C. § 2554(d) in turn asks not whether defense counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105, 131 S. Ct. at 788.

A.  Self-Defense

Petitioner first argues that the state appellate court unreasonably applied *Strickland* in rejecting Petitioner's claim that his trial counsel provided ineffective assistance by erroneously stating the self-defense burden of proof.[4] (Pet. at 5; Reply at 6.)

To raise the affirmative defense of self-defense under Illinois law, a defendant must show the following elements: "(1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable." *Lee*, 213 Ill. 2d at 225, 821 N.E.2d at 311. Once a defendant has presented some evidence of each of these elements, the burden then shifts to the state to negate at least one of them beyond a reasonable doubt. *Id.*; *see also People v. Myles*, 257 Ill. App. 3d 872, 882, 629 N.E.2d 648, 656 (1st Dist. 1994).

At trial, Petitioner's counsel argued in closing that the *defense* had met its burden of proving by preponderance of the evidence that Petitioner had acted in self-defense. (Direct Appeal Br. at PageID #:213.) Petitioner argues that it was in fact the *prosecution's* burden to *disprove* self-defense beyond a reasonable doubt, and that counsel's invocation of the incorrect standard rendered his counsel's performance ineffective. (Pet. at 5; Reply at 6.)

On appeal, the Illinois court found that trial counsel's actions did not prejudice Petitioner because there was little chance the outcome would have differed had counsel articulated the correct burden. *Pernell*, 2016 IL App (1st) 133876-U at ¶¶ 41, 43 (applying *Strickland* as

---

[4] Although we have held that the trial court's misapplication of a state-law issue is not cognizable in federal habeas, "claims of ineffective assistance of counsel can be premised on an attorney's failure to raise state-law issues." *Shaw*, 721 F.3d at 914 (7th Cir. 2013).

10

adopted by the Illinois Supreme Court). The appellate court first reasoned that, as "this was a bench trial," "the trial court is presumed to know the law and apply it accurately." *Id.* ¶ 44. Moreover, the appellate court found the evidence in the record so overwhelming as to easily disprove at least one element of self-defense, if not all. *Id.* Specifically, the appellate court discussed the testimony of the victim's wife, who "testified that defendant threatened her husband and shot him, even after he repeatedly apologized for cutting him off." *Id.* Three additional witnesses corroborated her testimony. *Id.* By contrast, the only evidence that the victim had been the aggressor or that Petitioner feared for his life came from Petitioner's own testimony. *Id.*

We may grant relief only if the state court decision "involved an unreasonable application" of clearly established federal law. 28 U.S.C. § 2254(d)(1). The appellate court's application of *Strickland* was not unreasonable here. First, the appellate court identified the correct legal standard for an ineffective assistance claim by applying *Strickland* (and Illinois' equivalent) and finding that lack of prejudice alone was sufficient to defeat the claim. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 (court need address only one of two ineffective assistance prongs if showing is insufficient).

Second, the facts confirm that the appellate court's application of *Strickland* was reasonable. *See Williams*, 529 U.S. at 408–09, 120 S. Ct. at 1520 ("unreasonable application" can occur if court identifies correct standard but applies it unreasonably to facts). Petitioner admitted on the witness stand that he shot Cruz. *Pernell*, 2016 IL App (1st) 133876-U at ¶ 25. The only remaining question for the trial court was whether the shooting was justified. The court heard from Cruz's wife, who testified that Petitioner threatened to shoot Cruz and then actually did so after Cruz apologized at least twice for cutting off Petitioner's car. *Id.* ¶ 5. Another eyewitness with no relation to Petitioner or the victim testified that Petitioner was yelling at the

11

victim's pickup truck, whose passengers were "gesturing apologetically." *Id.* ¶ 6. Two other unrelated witnesses corroborated events as described by these first two witnesses. *Id.* ¶¶ 8–10. The only witness to suggest that Cruz had been the aggressor or that Petitioner feared for his safety was Petitioner himself. *Id.* ¶¶ 25–27. The appellate court thus reasonably found that the "overwhelming evidence" refuted Petitioner's self-defense claim and rendered trial counsel's misstatement of the self-defense burden of no consequence to the ultimate outcome. *Id.* ¶ 44; *see Richter*, 562 U.S. at 105, 131 S. Ct. at 788 (state court's decision is reasonable where "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard"); *Rodriguez v. Gossett*, 842 F.3d 531, 538 (7th Cir. 2016) (finding of no prejudice was reasonable given sum total of evidence against defendant, despite defense counsel's brief mention of damaging information during closing statements); *see also Bowie v. Thurmer*, 342 F. App'x 200, 203 (7th Cir. 2009) (trial counsel's failure to object to a prosecutor's single improper sentence did not prejudice petitioner in context of trial as a whole).

The reasonableness of the appellate court's no-prejudice finding is enhanced further by the trial court's own rejection of Petitioner's self-defense claims. The trial court found, "even taking everything that the defendant said was true," the facts Petitioner presented did not support a legal justification for shooting Cruz. *Pernell*, 2016 IL App (1st) 133876-U at ¶ 47 (quoting trial court transcript). The trial court was unconvinced that any of Petitioner's claims about Cruz's actions—tailgating, tapping Petitioner's car, turning left onto 105th Street— rationalized not just brandishing a gun but aiming at Cruz and pulling the trigger. *Id.* Petitioner does no more than restate these facts in his present habeas petition. (Reply at 9.) Petitioner argues that trial counsel "sacrificed the reasonable doubt standard" for disproving his self-defense claims, (*id.* at 8), but both the trial court and the reviewing appellate court found ample evidence in the record to negate Petitioner's assertions regardless of trial counsel's errant statement. Under our

12

"doubly" deferential standard in reviewing Petitioner's ineffective assistance habeas claim, *Richter*, 562 U.S. at 105, 131 S. Ct. at 788, we cannot say the appellate court acted unreasonably in finding that trial counsel's erroneous statement of the self-defense standard of proof had no appreciable bearing on the outcome of Petitioner's case. Because the appellate court reasonably found that trial counsel's action did not prejudice Petitioner, we deny this habeas claim.

### B. Second-Degree Murder

In his third claim, Petitioner argues trial counsel provided ineffective assistance by failing to argue that the trial court should find him guilty of second-degree murder if the court determined the shooting was unjustified. (Pet. at 5.)[5] At trial, Petitioner's counsel argued in closing that the evidence showed Petitioner's actions were "not unreasonable," and Petitioner was thus "not guilty of second-degree murder because his actions were reasonable under the circumstances and he was justified in using the force that he used." (Direct Appeal Br. at PageID #:207 (quoting trial transcript).) Petitioner urges that because second-degree murder would have been a viable alternative given his testimony that Cruz's actions made him fearful, the appellate court applied the ineffective assistance standard unreasonably to Petitioner's case. (Reply at 12.) Petitioner argues it is irrelevant that he never saw Cruz with a weapon and Cruz never attempted to ram his truck into Petitioner's vehicle. (*Id.* at 12–13.)

---

[5] In Illinois, second-degree murder is a lesser-mitigated offense of first-degree murder. *See Pernell*, 2016 IL App (1st) 133876-U at ¶ 45; 720 ILCS 5/9–2(a)(2) ("A person commits the offense of second degree murder when he or she commits the offense of first degree murder . . . and . . . at the time of the killing he or she believes the circumstances to be such that, if they existed, would justify or exonerate the killing . . . but his or her belief is unreasonable."); *see also* 720 ILCS 5/7–1(a) (one is " justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.").

The Illinois Appellate Court rejected Petitioner's argument on direct appeal, holding it failed both of *Strickland*'s prongs. *Pernell*, 2016 IL App (1st) 133876-U at ¶¶ 45–48. The appellate court found that trial counsel's performance was not deficient in "pursuing an affirmative defense of self-defense as opposed to a second-degree murder defense," calling counsel's decision "a matter of trial strategy." *Id.* ¶ 48. The court further concluded that it was "exceedingly unlikely that defense counsel's arguments would have persuaded the trial court to find the defendant guilty of the lesser mitigated offense of second-degree murder rather than first-degree murder." *Id.* Not only could the trial court rule *sua sponte* for the lesser-mitigated offense without any suggestion from trial attorneys; the trial court also "determined there was no evidence supporting defendant's belief that the use of deadly for was necessary to protect himself from the victim." *Id.* ¶ 46, 47.

An attorney's "strategic choices" are afforded "a heavy measure of deference," and one challenging counsel's judgments "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689–91, 104 S. Ct. at 2065–66 (quotations omitted). In many cases, the decision to present (or not) differing theories of liability falls within the realm of reasonable strategic choice. *See Mitchell v. Enloe*, 817 F.3d 532, 539 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 335 (2016) (finding proper trial strategy to decline second-degree murder instruction for provocation along with self-defense and second-degree unreasonable belief instructions); *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006) (declining to conclude that counsel's decision not to seek jury instruction for lesser-included offense was professionally unreasonable); *United States ex rel. Thomas v. Pfister*, No. 13 C 03749, 2018 WL 453747, at *10 (N.D. Ill. Jan. 16, 2018) (decision not to give jury verdict forms on multiple theories of conviction not unreasonable strategy); *McDonald v. McCann*, No. 05 C 820, 2008 WL 4696164, at *11 (N.D. Ill. May 16, 2008), *aff'd*

14

*sub nom. McDonald v. Hardy*, 359 F. App'x 650 (7th Cir. 2010) (decision to decline second-degree murder instruction so that jury was "forced to choose between the competing theories of first degree murder and self defense" not unreasonable trial strategy).

In Petitioner's case, trial counsel appears to have made a strategic choice to stand firmly behind an argument that Petitioner acted in self-defense and to bolster that sentiment by not betraying a sense that Petitioner's actions might have been unjustified. (*See* Direct Appeal Br. at PageID #:207 (trial counsel arguing that Petitioner's actions were "reasonable under the circumstances and he was justified in using the force that he used").) This may not have been the best choice, since as we have covered, no evidence appeared to corroborate Petitioner's assertions of life-threatening fear. But the standard under *Strickland* is not whether counsel's conduct was the best or most successful, but whether it was so deficient as to fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. It is reasonable trial strategy to limit the judge's options and to force a choice between self-defense and first-degree murder instead of offering a compromise verdict. *McDonald*, 2008 WL 4696164, at *11. The appellate court reasoned that trial counsel's decision was within the realm of sound strategy, and we do not find this an unreasonable application of *Strickland*'s first prong.

Even if counsel's conduct was deficient, the appellate court's assessment that Petitioner's case was not prejudiced by lack of a second-degree murder argument forecloses the matter. *See Pernell*, 2016 IL App (1st) 133876-U at ¶ 48. As the appellate court recounted, the trial court essentially found that even if Petitioner believed all of the facts precisely as he had presented them in his testimony, those facts, if true, could not amount to a belief—reasonable or unreasonable—that Petitioner was in imminent danger of death or great bodily harm. *See id.* ¶ 47. In light of this reasoning, the appellate court found it "exceedingly unlikely" that a

15

defense counsel argument for second-degree murder would have obtained a different result. *Id.* ¶ 48. This is well below the "reasonable probability" for a different result that *Strickland* requires for a finding of prejudice. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *see also Richter*, 562 U.S. at 112, 131 S. Ct. at 792. Combined with the trial judge's independent ability to convict on second-degree murder without prompting, we decline to find unreasonable the appellate court's conclusion that Petitioner suffered no prejudice from trial counsel's decision. We therefore deny Petitioner's claim.

### III. CERTIFICATE OF APPEALABILITY

Petitioner requests a certificate of appealability ("COA"), (Reply at 14), and we are required by Rule 11(a) of the Rules Governing Section 2254 Cases to issue or deny a COA if we enter a final order adverse to the applicant. Pursuant to 28 U.S.C. § 2253(c)(1), a COA is required for an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254. We may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Walker v. O'Brien*, 216 F.3d 626, 631–32 (7th Cir. 2000). To show that his constitutional rights have been denied, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603–04 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 3394 (1983)).

Petitioner has not made a substantial showing that his constitutional rights have been denied. As discussed above, the Illinois Appellate Court reasonably rejected Petitioner's ineffective assistance claims, and Petitioner's remaining claim is not cognizable in federal

16

habeas. As we do not believe any reasonable jurist would come to a different result, we decline to issue a COA.

## CONCLUSION

For the reasons state above, we deny Petitioner's habeas petition. We also decline to issue a certificate of appealability. It is so ordered.

                                                                                                   Marvin E. Aspen
                                                                                                  United States District Judge

Dated: November 2, 2018
       Chicago, Illinois